## Hagerstown Bank *versus* Loudon Savings Fund Society.

1. Acts of the cashier of a bank in pursuance of authority from the board of directors, although in violation of the law of its existence, bind the bank.

2. As between a bank and those who contract with it in an unauthorized business, the new enterprise would become a part of its appropriate business, in the conduct of which it would be liable for the acts of its agents.

3. It is a universal rule in the law of agency, that in order to bind the principal upon a contract made by an agent, that the contract must be within the authority committed to the agent, and the authority should be strictly followed.

ERROR to the Court of Common Pleas of *Franklin County.*

This case was once before in the Supreme Court, for a report

of which, and for the facts in the case, the reader is referred to 12 Casey's Reports, 498.

The opinion of the court was delivered July 24th, 1861, by

WOODWARD, J.—The general principles of law laid down in the charge were such as were indicated when this cause was here before, 12 Casey, 501, and are well supported by the most approved authorities. The first two assignments of error are not quite just to the learned judge, for, though they present his language, they present it without the connections and qualifications with which he expresses it to the jury. Taking the charge and answers to points as they were delivered, we see nothing in them of which the plaintiff in error has reason to complain.

The only point on which we have had any doubt has reference to the repayment of the original deposit of $3,000. That, on the 14th June, 1854, the Hagerstown Bank deposited that sum with the Loudon Savings Fund Society, is past all doubt. And it is not decisive against the bank that it was not an ordinary deposit in the authorized and customary course of business which the Savings Fund was raised up to conduct; for if the Savings Fund, tempted from the purposes of its original institution, engaged in borrowing money at 4 per cent. to reloan at 6 per cent., the acts of Easton in pursuance of this policy would bind the Savings Fund just as effectually as if this had been one of the expressed purposes of the association. If a bank should engage in building a railroad, for instance, it would violate the law of its existence, but the acts of the cashier in pursuit of the unauthorized purpose would bind the bank. As between the bank and those who contracted with it, the new enterprise would become a part of its usual and appropriate business, in the conduct of which it would be liable for the acts of its agents.

But if its agents departed from *that* new enterprise and attempted to involve the bank in other unlawful pursuits without the express sanction of the directors or stockholders, there would be no legal ground of liability. The question in all such cases is whether the agent is acting in pursuance of his authority, it being a universal rule in the law of agency that in order to bind the principal upon a contract made by an agent, the contract must be within the authority committed to the agent, and the authority should be strictly followed. *Bank of Kentucky* v. *Bank of Schuylkill*, Parsons, 182. But the authority of the agent is not to be denied, if the principal have engaged him in a different business from that for which he was originally employed, so long, at least, as he confines himself to the pursuit of that business.

• We have no difficulty, therefore, in saying that if the Savings Fund Society undertook to circulate the Hagerstown Bank money, Easton's agency bound the society in the conduct of that business, and the society became clearly liable to repay the $3,000 obtained in 1854. But they say it was repaid. This the bank denies. A mere question of fact was thus raised. The court submitted it to the jury, and they decided it was repaid; the only question that can arise upon this part of the case for us to consider is whether there was evidence of repayment which justified the court in submitting it to the jury. Easton admits that on the former trial he said the $3,000 was paid, "but I think now that I was mistaken and that it was not paid, but was put into the $10,000 certificates. In looking at this account (his private book), I think this entry of $3,000 paid was in payment to bank of the $3,000 first borrowed. My impression is that the $3,000 and $7,000 were consolidated in $10,000, and only $5,000 paid on last $3,000. The $3,000 was consolidated in the $10,000, and I only paid $5,000. The cash-book produced is not my cash-book, but belongs to the company." I have transcribed this evidence as it stands in the paper book, without attempting to reconcile its contradictions. It convinced the court that the $3,000 had not been paid, but it persuaded the jury that it had been. The court submitted it with a strong intimation in favor of the bank. But the jury, to whom the question belongs, doubtless thought it was repaid in the $5,000 payment that was made on the consolidated certificate of $10,000. And seeing how the bank had dealt with Easton, lending him money, not on the foot of the original arrangement, but at 6 per cent., taking from him certificates of deposit, then getting him to change the form of the certificate, so that he should seem to have deposited the money with the Savings Fund Society, when in fact they had only loaned to him for his own use, indorsing that certificate to them, receiving one-half of it, and renewing it in the same form for the other half, Easton sometimes swearing the original loan was repaid, and sometimes it was not; I say the jury, seeing all this, might well enough conclude that the only debt the bank ever had against the society was repaid in the $5,000 that were paid at the time the certificate in suit was given, 1st January, 1857. There was no error in referring that question to the jury; there was evidence from which they might well decide it as they did. But counsel think that the books of the society and the annual report of the auditors are decisive evidence that the society knew this debt was not paid. These documents do not exhibit evidence of a loan of $3,000 at six per cent., but of a deposit of that amount at four per cent interest. Such were the entries of 1854, '55, and '56.

[Taylor's Adm'rs *v.* Witman's Adm'rs.]

The report of auditors of 12th March, 1857, is not given, but on the cash-book there appears an entry under date of 29th April, 1857, of $3,226 67, paid to Hagerstown Bank, and Easton, when last called by the plaintiffs, said, "It looks to me as if the $3,000 were part of the $5,000 paid, judging from the entries in the book."

If such was Mr. Easton's conclusion from the book-entries, why should counsel be surprised that the directors of the Savings Fund and the jury thought the debt paid? Easton was the plaintiffs' witness, a stockholder in their bank, their customer who had conducted all the business between them and the Savings Fund, and his judgment as to what the books imported, he having controlled the entries, ought, we would think, to command the respect of the plaintiffs. At least they ought not to complain that the jury took the judgment of their own witness as the basis of the verdict.

The judgment is affirmed.